UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-2031(DSD/SRN)

Richie Company, LLP,

Plaintiff,

v.

**ORDER**

Lyndon Insurance Group, Inc.,

Defendant.

Robert J. Tansey, Jr., Esq., Norman J. Baer, Esq., John P. Boyle, Esq. and Anthony, Ostlund & Baer, 90 Seventh Street South, Minneapolis, MN 55402, counsel for plaintiff.

Michael H. Streater, Esq., Mark G. Schroeder, Esq. and Briggs & Morgan, W2200 First National Bank Building, 322 Minnesota Street, St. Paul, MN 55101, counsel for defendant.

This matter is before the court on defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. Based on a review of the file, record and proceedings herein, the court grants defendant's motion and denies plaintiff's motion.

**BACKGROUND**

The facts in this case are undisputed. This dispute concerns the construction and interpretation of a one and one-quarter page

FILED 12-5-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 12-5-01
Deputy Clerk's Initials ____

letter signed by each of the parties. The letter discusses the potential compensation to be paid by plaintiff Richie Company, L.L.P. ("Richie") for having brought an opportunity to defendant Lyndon Insurance Group, Inc. ("Lyndon") to acquire a business. Plaintiff is a Minnesota limited liability partnership. Defendant is a Missouri corporation that administers, markets and provides insurance and reinsurance for service contracts on automobiles, recreational vehicles and water craft.

In early 1999, a partner of Richie, introduced Lyndon to an opportunity to acquire First Protection Corporation ("FPC") and another unrelated company, Mechanical Breakdown Protection, Inc. ("MBPI"). FPC was in the marine service contract business, and MBPI was involved in the service contract industry.[1] Plaintiff initially suggested that defendant acquire FPC and then acquire an equity interest in MBPI. Plaintiff indicated that it wanted compensation for having brought this business opportunity to defendant. In April 1999, it was decided that the parties would prepare a letter setting forth their understanding of any compensation to be paid to plaintiff for having brought these acquisition opportunities to defendant.

---

[1] Plaintiff and MBPI were already doing business having entered into an agreement regarding service contracts in July 1998. Under this agreement, MBPI was obligated to pay Richie a $12.50 fee for each service contract issued, sold or administered by MBPI or MBPI affiliate for a period of 25 years.

On April 16, 1999, a letter was drafted relating to the proposed compensation arrangement between the parties. In relevant part, the April 16, 1999 letter provided that if Lyndon acquired FPC and did not transfer it to MBPI, "Lyndon has agreed that it will enter into a Service Contract Agreement with Richie substantially identical to the (Richie/MBPI Agreement) and pay Richie $12.50 for each service contract created by FPC for a period of 25 years." The letter did not define the term "substantially identical" nor were there any discussions between the parties as to what was intended by that phrase. It further stated that the parties would enter into the service contract agreement "within 180 days after the acquisition of FPC by Lyndon".[2] The letter also specified that the transactions described in the letter were "subject to due diligence," and that there was "no requirement that Lyndon consummate" such transactions.

On March 6, 2000, defendant closed on the acquisition of FPC. Since the acquisition, FPC has been operated as a subsidiary of defendant.[3] Defendant did not purchase any interest in MBPI, and FPC was not made a part of MBPI.

[2] This was one of the several acquisition scenarios that were laid out in the letter. The letter also contained references to how Richie would be compensated if Lyndon acquired FPC and an equity interest in MBPI.

[3] In January 2000, Protective Life Insurance Company ("Protective") acquired Lyndon.

This lawsuit was filed on August 28, 2000, 175 days after Lyndon's acquisition of FPC. Before filing this lawsuit, defendant contends that plaintiff engaged in no discussion with defendant regarding the negotiation and preparation of a service contract agreement, never asked defendant to begin paying any service contract fees pursuant to the letter, and never provided defendant with a proposed service contract agreement. (Ravich Dep. at p. 91; Anderson Aff. at ¶ 10.)

In its complaint, plaintiff asserts a single claim against defendant for breach of contract, alleging that Lyndon breached the April 16, 1999, letter of intent by failing to enter into a service contract agreement with Richie "substantially identical" to the Richie/MBPI Agreement. After a careful review of the record and for the following reasons, the court grants defendant's motion and denies plaintiff's motion for summary judgment.

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party

to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 250. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.

**B. Letter Unenforceable As A Contract**

As a matter of law the April 16, 1999, letter does not create an enforceable contract.

Whether a letter of agreement constitutes an enforceable contract is a question of law for the court decide. See Lindgren

v. Clearwater Nat'l Corp., 517 N.W.2d 574, 574 (Minn. 1994) (construing whether letter of intent was enforceable contract or unenforceable agreement to agree is a legal question); Marso v. Mankato Clinic, Ltd., 278 Minn. 104, 114, 153 N.W.2d 281, 288 (1967) (interpretation of an unambiguous writing is a question of law for the court).

Under Minnesota law, a letter creating an agreement to negotiate in good faith in the future is not enforceable if it does not constitute the parties' complete and final agreement. See Lindgren, 517 N.W.2d at 574; Mohrenweiser v. Blomer, 573 N.W.2d 704, 706 (Minn. Ct. App. 1998) (holding that a letter of agreement from owner to prospective purchaser was not a binding contract but an unenforceable agreement to agree since it contained language discussing future agreements between parties); Hansen v. Phillips Beverage Co., 487 N.W.2d 925, 927 (Minn. Ct. App. 1992) (holding as unenforceable a letter of intent that contained nonbinding offer for sale of business since the letter was merely an agreement to negotiate in good faith in future). Moreover, a letter of agreement may only constitute an enforceable contract if the parties manifest an intent that it be so. Lindgren, 517 N.W.2d at 574.[4]

---

[4] In making a determination of intent, the court must look to the language of the letter. Lindgren, 517 N.W.2d at 574. Where it is clear from that language that the letter is "not the complete and final agreement the parties contemplated would govern the (continued...)

In Lindgren, the parties drafted a letter of intent for the sale of townhomes. The letter contained a specific provision that provided that, "the parties shall enter into a definite purchase agreement which shall be drafted by the buyers within 30 days." Lindgren, 517 N.W.2d at 574. The Minnesota Supreme Court held that this language only created an agreement to negotiate in good faith in the future and was not the complete and final agreement that would govern the conveyance of property. Id. The Court further held that the agreement was unenforceable as a contract despite the fact that the letter contained precise sale terms, such as the property's legal description, the purchase price, the terms of the mortgage, and a closing date. In sum, if a letter of agreement only represents a summary of negotiations and contains an expression of willingness to enter into a binding agreement at a future date, such an agreement is unenforceable as a contract under Minnesota law. See Lindgren, 517 N.W.2d at 574; Mohrenweiser, 573 N.W.2d at 706; Metro Office Parks Co. v. Control Data Corp., 295 Minn. 348, 205 N.W.2d 121, 125 (1973) (holding that as a matter of law letter of intent not binding unless parties manifest an intent that it be so).

The Eighth Circuit has reached the same conclusion under similar circumstances. See Consol. Grain and Barge Co. v. Madgett,

[4] (...continued)
[deal]," then the letter is nothing more than an agreement to agree and is not legally enforceable. Id.

928 F.2d 816, 817-818 (8th Cir. 1991) (holding that an agreement to negotiate in good faith over profit-sharing issue was unenforceable as a contract); Ohio Calculating, Inc. v. CPT Corp., 846 F.2d 497, 501 (8th Cir. 1988) (holding that an agreement to begin negotiations for purchase of business was "unenforceable and unremediable" as a contract); C & S Acquisitions Corp. v. Northwest Aircraft, Inc., 153 F.3d 622, 626 (8th Cir. 1998) ("[u]nder Minnesota law, agreements to negotiate in good faith in the future are unenforceable as a matter of law."). See also Schoffman v. Cent. States Diversified, Inc., 69 F.3d 215, 221 (8th Cir. 1995) (holding that employees who sought to enforce terms of letter they received from their employer regarding their employment and compensation was too vague to be enforceable under Minnesota law because it merely represented a summary of negotiations and a willingness to enter into a future binding agreement).[5]

[5] Defendant also argues that summary judgment is warranted because the April 16, 1999, letter does not contain all of the essential terms necessary to form a binding agreement, and it is too indefinite and vague to create an enforceable agreement. In particular, defendant points out that critical terms in the letter are not defined. While the court determines that it need not address this argument in great detail given its resolution of this matter on the grounds discussed, the court agrees with defendant's assertion and believes that this argument would provide an alternative basis to grant defendant summary judgment. See Metro Office Parks Co., 205 N.W.2d at 125; King v. Dalton Motors, Inc., 260 Minn. 124, 126, 109 N.W.2d 51, 52 (1961) (holding that a contract is unenforceable where it "is so vague, indefinite, and uncertain as to place the meaning and intent of the parties in the realm of speculation."). See also Schoffman, 69 F.3d at 220-221 (granting defendant's motion for summary judgment because letters (continued...)

After a careful review of the document at issue here, the court concludes that the April 16, 1999, letter can only be considered to be an unenforceable agreement to agree. This letter expressly provides that in the event that Lyndon acquires FPC and does not transfer it to MBPI within 180 days, "Lyndon has agreed that it ***will enter*** into a service contract agreement with Richie substantially identical" to the Richie/MBPI agreement (emphasis added). This language clearly speaks to future actions and agreements to be made between the parties. As a matter of law, this language evidences that the letter "was not the complete and final agreement the parties contemplated would govern" but "merely created an agreement to negotiate in good faith." Lindgren, 517 N.W.2d at 574;[6] Hansen, 487 N.W.2d at 927 ("[the] letter creates merely an agreement to negotiate in good faith. Under Minnesota law such an agreement is unenforceable where the agreement evidences nothing more than an intention to negotiate in the future."); Schoffman, 69 F.3d at 221.

---

[5](...continued)
in dispute were too vague to constitute valid enforceable contract and finding that the letters represented nothing more than summaries of the parties' negotiations and an expression of willingness to later enter into a binding agreement).

[6] The court notes that the language in the April 16, 1999, letter is nearly identical to the language the Minnesota Supreme Court considered in Lindgren. See Lindgren, 517 N.W.2d at 574 ("[t]he parties shall enter into a definite purchase agreement which shall be drafted ... within 30 days.").

Because the April 16, 1999, letter does not create an enforceable agreement, defendant is entitled to summary judgment and plaintiff's claim for breach of contract must be dismissed with prejudice.

## CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment is granted and plaintiff's motion for partial summary judgment is denied. Accordingly, plaintiff's claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 5, 2001

David S. Doty, Judge
United States District Court

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd